**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ANDREW HALLDORSON, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) Civil Action No. 06-1618 (EGS) |
| v. | ) |
|  | ) |
| THE SANDI GROUP and RUBAR S. | ) |
| SANDI, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

<u>**MEMORANDUM OPINION**</u>

This case is before the Court on defendant The Sandi Group's Motion to Dismiss Counts III and IV of the Third Amended Complaint and defendant Rubar S. Sandi's Motion to Dismiss Counts II, III, and IV of the Third Amended Complaint.  Upon consideration of the motions, the responses and replies thereto, the applicable law, the entire record, and for the reasons explained below, defendants' motions will be **GRANTED**.

**I.   BACKGROUND**

Plaintiff Andrew Halldorson brought this case originally as a *qui tam* action on behalf of the United States under the False Claims Act, 31 U.S.C. § 3729, *et seq.*[1]  Plaintiff alleged, *inter alia*, that defendants submitted false claims to the United States in connection with certain contracts in Iraq and

---

[1] Plaintiff initially brought this action with another Relator, Brian Evancho, who is no longer a party.

Afghanistan.  On March 16, 2011, the United States filed a notice of intervention, stating that it would intervene for the limited purpose of settlement and to file a stipulation of dismissal.  ECF No. 39.

In the Amended Complaint, which was the operative complaint at the time the settlement was reached, Halldorson alleged two retaliation claims.  ECF No. 37.  Specifically, in Count III, titled "False Claims Retaliation," Halldorson alleged that he "was an employee who was discharged, suspended, threatened, harassed, and in other manners discriminated against in the terms and conditions of employment by his employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of a False Claims Act action under this section."  Amend. Compl. ¶ 59.  In Count IV of the Amended Complaint, titled "State Law Retaliation," Halldorson alleged that he "threatened to disclose, to a supervisor or to a public body, an activity, policy or practice of the Defendant that was in violation of law, rule, or regulation.  This violation created and presented a substantial and specific danger to public health and safety."  Amend. Compl. ¶ 61.  He further alleged that he "provided information to a public body conducting an inquiry into this violation" and that he "objected to and refused to participate in, this violation."  Amend. Compl. ¶¶ 62-63.

On April 18, 2011, the parties filed a joint stipulation of dismissal ("Stipulation").  ECF No. 42.  The Stipulation stated that the parties had entered into a settlement agreement effective April 5, 2011 ("Settlement Agreement") that resolved nearly all of the claims set forth in the relators' Amended Complaint.  The Stipulation further stated that the Amended Complaint would be dismissed with prejudice to the Relators, except that "Relators' claims for reasonable attorneys' fees, expenses and costs pursuant to 31 U.S.C. § 3730(d) are not dismissed."  The Stipulation also stated that "Halldorson's claims for retaliation under state and federal law against TSG Group [defined in the Stipulation as The Sandi Group, Dr. Rubar S. Sandi, and Corporate Bank Financial Services], including claims pursuant to 31 U.S.C. § 3730(h), are not dismissed."

The Settlement Agreement was not filed on the docket in this case, though it was referenced in the Stipulation of Dismissal and plaintiff's Third Amended Complaint (TAC ¶ 59), and was attached to The Sandi Group's motion to dismiss.  In the Settlement Agreement, Halldorson released TSG Group (defined as all defendants at the time: Corporate Bank Financial Services, Inc., Dr. Rubar S. Sandi, and The Sandi Group)

> from any civil monetary claim [Halldorson] may have on
> behalf of [himself] or of the United States that was
> alleged or could have been alleged in the Civil
> Action, or that is in any way related to the subject
> matter of the Civil Action, including but not limited

3

to claims under the False Claims Act, 31 U.S.C. §§ 3729-3722, or the common law theories of recovery, except for claims for attorneys' fees, expenses and costs pursuant to 31 U.S.C. § 3730(d), and claims for retaliation under state and federal law, including claims pursuant to 31 U.S.C. § 3730(h).

Settlement Agreement, ECF No. 76-2, at ¶ 6.

Following settlement, plaintiff Halldorson filed an unopposed motion for leave to file a Second Amended Complaint, which the Court granted.  ECF Nos. 50-51.  In the motion for leave to amend, Halldorson stated that the proposed amendment "eliminate[d] a state law retaliation claim (leaving only the statutory claim for retaliation under FCA Section 3730(h)); [and] eliminate[d] Dr. Rubar Sandi as a Defendant. . . ."  ECF No. 50 at 1.  In arguing that amendment was in the interests of justice, Halldorson contended that amendment would "expedite and streamline further proceedings by narrowing the action to the pending Section 3730(h) claim and particularizing the allegations that pertain to the sole remaining claim."  *Id*. at 2.  In the Second Amended Complaint ("SAC"), Halldorson alleged one count of False Claims Act retaliation, pursuant to 31 U.S.C. § 3730(h), against defendant The Sandi Group.  *See* SAC ¶¶ 45-46. No other claims were alleged and no other parties were named as defendants in the Second Amended Complaint.

After the Second Amended Complaint was filed, plaintiff and the sole remaining defendant The Sandi Group engaged in

4

mediation.   Following mediation, Halldorson obtained new counsel and filed a motion for leave to file a Third Amended Complaint ("Third Amended Complaint" or "TAC").   ECF No. 70.   The Court granted leave to amend over objection on March 16, 2012.   The Third Amended Complaint includes the FCA retaliation claim under Section 3703(h) that was included in the Second Amended Complaint.   *See* TAC, Count I.   The Third Amended Complaint also includes several new claims and purports to bring Dr. Sandi back into the litigation.   Count II, alleged against Dr. Sandi, seeks compensatory and punitive damages for Dr. Sandi's alleged tortious interference with Halldorson's business expectancies. *See* TAC, Count II.   Count III alleges fraudulent misrepresentation against The Sandi Group and Dr. Sandi and seeks compensatory and punitive damages.   *See* TAC, Count III. Count IV, asserted against The Sandi Group and Dr. Sandi, alleges that defendants intentionally inflicted emotional distress on Halldorson and seeks compensatory and punitive damages.   *See* TAC, Count IV.

Defendants have separately moved to dismiss the new counts in the Third Amended Complaint.   The motions are ripe for the Court's decision.

## II.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.   *Browning v. Clinton,* 292 F.3d

235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).  "[W]hen ruling on defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Office of the Mayor,* 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)). The court must also grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994).  A court need not, however, "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Id.*  In addition, "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).  Only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*

## III. DISCUSSION

Defendant The Sandi Group moves to dismiss Counts III and IV of the Third Amended Complaint.  Dr. Sandi moves to dismiss Counts II, III and IV of the Third Amended Complaint.  The

parties' arguments are discussed below.  Because of the substantial similarity between the arguments made in the motions to dismiss and plaintiff's arguments in opposition, defendants will be referred to collectively where possible.

**A. Effect of the Settlement Agreement**

The Sandi Group argues that the Settlement Agreement released all of the new claims (Count III and IV) asserted against it in the Third Amended Complaint.  Dr. Sandi argues that the Settlement Agreement released all claims asserted against him (Counts II, III and IV) in the Third Amended Complaint.

1. Whether the Court may consider the terms of the Settlement Agreement

As an initial matter, the parties dispute whether the Court may properly consider the Settlement Agreement in connection with defendants' Motions to Dismiss.  In ruling on a 12(b)(6) motion to dismiss, the Court "may consider only the facts alleged in the complaint, [and] any documents either attached to or incorporated in the complaint," *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997), or those "documents upon which the plaintiff's complaint necessarily relies . . . produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss," *Hinton v. Corrections Corp. of Amer.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009); *accord*

*Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (court may consider documents appended to a motion to dismiss if their authenticity is not disputed and they are referred to in the complaint).  The Court may also consider matters of which it may take judicial notice, such as public records.  *See Kaempe*, 367 F.3d at 965.

Plaintiff argues that the Court cannot consider the Settlement Agreement because the Court's focus is "restricted to the facts alleged in the pleading and any documents attached thereto."  Pl.'s Opp. to The Sandi Group's Mot. to Dismiss at 7, n.4; *see* Pl.'s Opp. to Dr. Sandi's Mot. to Dismiss at 6.  The Court disagrees.  First, plaintiff's argument that the Court may only consider the facts in the complaint and any documents attached to the complaint is not an accurate statement of the law, as discussed above.  Furthermore, the Court finds that the Settlement Agreement has been incorporated by reference into the Third Amended Complaint.  In paragraph 59 of the complaint, plaintiff alleges that his "complaints led to an $8.7 million settlement between The Sandi Group, Dyncorp, and the U.S. Government, with The Sandi Group paying $1.01 million to resolve the allegations."  TAC ¶ 59.  In addition, the Court notes that plaintiff does not challenge the validity of the Settlement Agreement or its terms, only the effect of those terms on this litigation.  *See Rogers v. Johnson-Norman*, 466 F. Supp. 2d 162,

170 n.5 (D.D.C. 2006) (holding that court could appropriately
consider effect on current case of settlement agreement in
another litigation where parties did not dispute the validity of
the agreement, only the meaning of its terms).  Finally, even if
the Settlement Agreement were not properly incorporated by
reference into the Third Amended Complaint, the Court finds that
it may take judicial notice of the terms of the Settlement
Agreement because it is referenced extensively in the
Stipulation of Dismissal, which was filed on the public docket
for this matter.  *See* ECF No. 42.[2]

2. <u>Whether Plaintiff's New Claims Are Barred by the Settlement
   Agreement</u>

Defendants argue that plaintiff's new claims are barred by
the Settlement Agreement.  In the Settlement Agreement,
Halldorson released TSG Group (defined as all defendants at the
time: Corporate Bank Financial Services, Inc., Dr. Rubar S.
Sandi, and The Sandi Group)

> from any civil monetary claim [Halldorson] may have on
> behalf of [himself] or of the United States that was
> alleged or could have been alleged in the Civil

---

[2] Although not argued by the parties, the Court finds that the
Stipulation of Dismissal itself incorporates the relevant
language from the Settlement Agreement regarding plaintiff's
remaining claims.  *See* Stip. of Dismissal at 2 (stating that the
Amended Complaint would be dismissed with prejudice except for
"Halldorson's claims for retaliation under state and federal
law").  Thus, even if the Settlement Agreement were not properly
incorporated by reference, the Court could refer to the
Stipulation.

Action, or that is in any way related to the subject
matter of the Civil Action, including but not limited
to claims under the False Claims Act, 31 U.S.C. §§
3729-3722, or the common law theories of recovery,
except for claims for attorneys' fees, expenses and
costs pursuant to 31 U.S.C. § 3730(d), and claims for
retaliation under state and federal law, including
claims pursuant to 31 U.S.C. § 3730(h).

Settlement Agreement, ECF No. 76-2, at ¶ 6.  Because the Motions

to Dismiss do not focus on any issues relating to fees, and

because The Sandi Group is not seeking to dismiss Count I,[3] which

alleges a violation of 31 U.S.C. § 3730(h), the only question

before the Court is whether plaintiff's new claims against Dr.

Sandi and The Sandi Group are "claims for retaliation under

state and federal law."

Settlement agreements are governed by principles of

contract law.  *Green v. AFL-CIO*, 657 F. Supp. 2d 161, 165

(D.D.C. 2009) (citing *Gaines v. Cont'l Mort. & Inv. Corp.*, 865

F.2d 375, 378 (D.C. Cir. 1989)).  Where a contract is clear and

unambiguous on its face, its plain language controls in

determining the parties' intentions.  *Washington Inv. Partners*

*of Del., LLC v. Sec. House*, K.S.C.C., 28 A.3d 566, 573 (D.C.

2011).  If claims have been released through a settlement

agreement, a court will bar those claims and grant a motion to

dismiss.  *Sparrow v. Interbay Funding, LLC*, No. 05-581, 2006 WL

2844254, at *3 (D.D.C. 2006) (citing *Sirmans v. Caldera*, 138 F.

---

[3] Count I is only alleged against The Sandi Group, not Dr. Sandi.

Supp. 2d 14, 19 (D.D.C. 2001); *Schmidt v. Shah*, 696 F. Supp. 2d
44, 62 (D.D.C. 2010).  Furthermore, a settlement agreement may
be drafted to release certain claims but not others.  *Ohio v.
Bristol-Myers Squibb Co.*, No. 02-1080, 2003 WL 21105104, at *9
(D.D.C. 2003).  Where a contract contains language of release, a
court "must rely solely on its language as providing the best
objective manifestation of the parties' intent,' and 'where the
terms of the document leave no room for doubt, [its] effect . .
. can be determined as a matter of law."  *Washington Inv.
Partners of Del.*, *LLC*, 28 A.3d at 573 (quoting *Bolling Fed.
Credit Union v. Cumis Ins. Soc'y, Inc.*, 475 A.2d 382, 385 (D.C.
1984)).

Plaintiff contends that the Settlement Agreement permits
plaintiff to "proceed with claims *arising from* the retaliation
he suffered from Dr. Sandi and TSG as a result of his reporting
False Claims to the government."  Pl.'s Opp. to Dr. Sandi's Mot.
to Dismiss at 8-9 (emphasis added); *see* Pl.'s Opp. to TSG's Mot.
to Dismiss at 8.  Plaintiff also argues that because the
District of Columbia has no state law equivalent to a
retaliation claim and the parties did not capitalize the word
"retaliation" in the Settlement Agreement, the inclusion of such
language "presupposed" that the retaliation claims would be
similar to the state law claims asserted by plaintiff in Counts
II, III and IV of the Third Amended Complaint.  Pl.'s Opp. to

Dr. Sandi's Mot. to Dismiss at 9; *see* Pl.'s Opp. to The Sandi Group's Mot. to Dismiss at 8.

The Sandi Group argues that Counts III and IV fall under the terms of plaintiff's release because they could have been previously alleged in the action and because they are related to the subject matter of the action, since they are based on alleged conduct that occurred during plaintiff's alleged employment by The Sandi Group.  The Sandi Group also argues that Counts III and IV, alleging fraud and intentional infliction of emotional distress, are not retaliation claims under state or federal law.[4]  Dr. Sandi makes similar arguments regarding Counts II, III and IV.  Defendants also argue that the new state law claims should not be considered "retaliation" claims under the Settlement Agreement simply because no state law retaliation claim is available to plaintiff under District of Columbia law.[5]

---

[4] As The Sandi Group notes, a cause of action for False Claims Act retaliation under 31 U.S.C. ¶ 3730(h) is a very specific cause of action.  It requires an employee, contractor or agent to provide he was "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."  31 U.S.C. ¶ 3730(h).

[5] Although the Court need not look beyond the four corners of the Settlement Agreement to determine that Counts II, III and IV do not fall within the "claims for retaliation under federal and state law" exempted under the Settlement Agreement, the Court notes that plaintiff had previously alleged a claim for "State Law Retaliation" in the Amended Complaint, which was the

The Court agrees with defendants.  In the Settlement Agreement, plaintiff clearly and unambiguously released all claims he had that were alleged or "could have been alleged" in this action or that were "in any way related to the subject matter" of this action, other than claims for attorneys' fees, expenses and costs, and claims for retaliation under state and federal law.  Settlement Agreement at ¶ 6.  Counts II, III and IV are all claims that "could have been alleged" previously in this action and are "related to the subject matter" of this action because they relate to plaintiff's employment at The Sandi Group.  Accordingly, plaintiff forfeited his right to assert those claims when he agreed to a settlement.

Because Counts II, III and IV are claims that could have been alleged previously, the only way they are not barred by the Settlement Agreement is if they are "claims for retaliation under state and federal law."  Plaintiff argues that the Settlement Agreement permitted the subsequent filing of claims "arising from" the retaliation plaintiff allegedly suffered. The Court disagrees.  The Settlement Agreement expressly limited itself to "claims *for* retaliation" not claims *arising from* retaliation.  This language is clear and unambiguous and

---

operative complaint at the time the Settlement Agreement was executed.  *See* ECF No. 37.  This very strongly suggests that the parties had plaintiff's "state law retaliation" claim in mind when they executed the Settlement Agreement.

controls the Court's analysis when determining the parties'
intent.  *See Wash. Inv. Partners of Del.*, 28 A.3d at 574.  The
Court reads this language to permit new claims alleging only
retaliation, not individual acts of wrongdoing that may have
arisen from or have some connection to retaliation.  Counts II,
III and IV are therefore barred because they are not retaliation
claims.  The wrongdoing alleged in those claims may provide the
context for plaintiff's existing False Claims Act retaliation
claim, but they cannot stand alone as "state law retaliation
claims" under the terms of the Settlement Agreement.

Nor is the Court persuaded by plaintiff's argument that
because the District of Columbia has no state law equivalent to
a retaliation claim, the parties "presupposed" that other state
law claims would be asserted in place of a retaliation claim
under state law.  The Settlement Agreement says nothing of the
sort.  Moreover, to the extent that plaintiff misunderstood the
applicable law or the availability of a remedy, plaintiff cannot
stretch the plain meaning of the language in the Settlement
Agreement to compensate for that misunderstanding.  *See* 75
C.J.S. Release § 25 ("In the absence of fraud, a releasor cannot
escape from the effects of his or her agreement, in whole or in
part, by merely showing that he or she was mistaken as to the
law or as to the legal import and effect of the terms used.").

14

Settlement Agreements are intended to end litigation on a particular matter and free the parties from any concern of resurrection of the claims.  *See Healy v. Labgold*, 271 F. Supp. 2d 303, 305 (D.D.C. 2003) ("Why settle a case, pay good money, and leave oneself exposed to another lawsuit?").  Here, plaintiff entered into a settlement agreement that permitted him only to file "claims for retaliation under state and federal law."  Settlement Agreement at ¶ 6.  Plaintiff does not dispute the validity of the Settlement Agreement.  Accordingly, the Court will enforce the Settlement Agreement as written and hold that "claims for retaliation under state and federal law" do not include claims for tortious interference with business expectancies, fraud, or intentional infliction of emotional distress.

**B. Statute of Limitations**

The Court also finds that Counts II, III and IV are barred by the statute of limitations.  Under District of Columbia law, claims for fraud/fraudulent inducement, intentional infliction of emotional distress, and tortious interference with business expectancies are governed by a three-year statute of limitations.  *See* D.C. Code § 12-301 (providing for a three-year statute of limitations for any cause of action "for which a limitation is not otherwise specifically prescribed"); *see King v. Kitchen Magic, Inc.*, 391 A.2d 1184, 1186 (D.C. 1978) (fraud);

*Advantage Health Plan, Inc. v. Knight*, 139 F. Supp. 2d 108, 112 (D.D.C. 2001) (tortious interference); *Rendall-Speranza v. Nassim*, 107 F.3d 913, 920 (D.C. Cir. 1997) (intentional infliction of emotional distress).

A statute of limitations begins to run on the date that an alleged event occurred. *Zhi Chen v. Monk*, 701 F. Supp. 2d 32, 36 (D.D.C. 2010). Because plaintiff's claims arise from his employment at The Sandi Group, which ended in January 2006, the statute of limitations for all claims expired no later than January 2009.[6] Accordingly, unless plaintiff can establish that the statute of limitations for Counts II, III, and IV has been tolled, the new claims are time-barred.

In order to determine whether the statute of limitations has been tolled, the Court must focus on the somewhat peculiar procedural history of the case. Here, plaintiff agreed in the Settlement Agreement to dismiss all claims against defendants except for "claims for retaliation under state and federal law" and certain claims for fees and costs. At the time of settlement, the operative complaint was the Amended Complaint,

---

[6] The parties dispute whether certain claims relate to plaintiff's first period of employment at TSG that ended in October 2005, or to his second period of employment between December 2005 and January 2006. The distinction is not material for purposes of this Opinion and, viewing the facts in the light most favorable to the plaintiff, the Court will assume without deciding that all three of the new causes of action accrued on the later date of January 2006.

which had alleged a claim titled "state law retaliation" against
The Sandi Group and Dr. Sandi.  Following settlement, plaintiff
filed a Second Amended Complaint against only one defendant, The
Sandi Group, and asserted only one claim for False Claims Act
retaliation pursuant to 31 U.S.C. ¶ 3730(h).  Excluded from the
Second Amended Complaint was the "state law retaliation" claim
alleged in the Amended Complaint.  Also excluded were all claims
against Dr. Sandi.  Critically, in plaintiff's unopposed motion
for leave to file a Second Amended Complaint, plaintiff
represented to the Court and the defendants that the proposed
amendment "eliminates a state law retaliation claim" and
"eliminates Dr. Rubar Sandi as a defendant."  ECF No. 50 at 1-2.
Plaintiff further stated that the amendment would "expedite and
streamline further proceedings by narrowing the action to the
pending Section 3730(h) claim and particularizing the
allegations that pertain to *the sole remaining claim*."  ECF No.
50 at 2 (emphasis added).  After the Second Amended Complaint
was filed, the parties engaged in mediation.  Shortly
thereafter, plaintiff's counsel withdrew from the case and
plaintiff obtained new counsel.  Plaintiff's new counsel then
sought leave to file the Third Amended Complaint that is the
subject of this Opinion.

 Plaintiff argues that Counts II, III and IV are properly
before the Court and were timely filed, and that the statute of

limitations should accordingly be deemed tolled because The Sandi Group and Dr. Sandi "were well aware" at the time of settlement that plaintiff "would pursue employment-related retaliation claims against them."  Plaintiff argues that the claims therefore relate back to the allegations in the "Complaint, Amended Complaint, and Second Amended Complaint." Pl.'s Opp. to The Sandi Group's Mot. to Dismiss at 9; *see* Pl.'s Opp. to Dr. Sandi's Mot. to Dismiss at 10.[7]

The Court disagrees.  As an initial matter, plaintiff's specific and deliberate elimination of the state law retaliation claims and all claims against Dr. Sandi in the Second Amended Complaint operated as a voluntary dismissal of those claims.  It is hornbook law that an amended complaint supersedes the prior complaint and renders it of no legal effect.  *See Adams v. Quattlebaum*, 219 F.R.D. 195, 197 (D.D.C. 2004) (citing *Washer v. Bullitt Cnty.*, 110 U.S. 558, 562 (1884)).  In this case, even though plaintiff avoided using the word "dismiss," and instead chose the word "eliminate," he cannot avoid the practical effect of having dismissed the "state law retaliation" claim and all claims against Dr. Sandi.  *See* Merriam-Webster Dictionary

---

[7] As defendants point out, plaintiff has not identified any reason to equitably toll the statute of limitations.  *Cf. Carter v. WMATA*, 764 F.2d 854, 858 (D.C. Cir. 1985) (noting that "[e]xceptions to the general rule of strict application are seen as justifiable only when the court perceives that an extraordinarily inequitable outcome would otherwise obtain").

Online, http://www.merriam-webster.com/dictionary/eliminate (last visited Mar. 27, 2013) (defining "eliminate" as "to put an end to or get rid of" or "to remove from consideration").  The Court finds that the filing of the Second Amended Complaint thus operated as a voluntary dismissal by plaintiff of his "state law retaliation" claims against The Sandi Group and of all claims against Dr. Sandi.

In deciding whether Counts II, III and IV are barred by the statute of limitations, the Court is faced with two related questions: whether the voluntary dismissal of Dr. Sandi prohibits plaintiff from asserting new claims against him, and whether the voluntary dismissal of certain—but not all—claims against The Sandi Group prohibits plaintiff from asserting new claims against it.

It is well-established that the statute of limitations on a claim in a case that is voluntarily dismissed is no longer subject to tolling once the case has been voluntarily or involuntary dismissed.  *See Ciralsky v. CIA*, 355 F.3d 661, 672 (D.C. Cir. 2004) ("[O]nce a lawsuit is dismissed, even if without prejudice, "the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing.") (citing *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000)).  This principle

has been extended to apply to the dismissal of certain parties
in a particular lawsuit, even if the entire case is not
dismissed.  *See Breen v. Peters*, 529 F. Supp. 2d 24, 28-29
(D.D.C. 2008) (statute of limitations on claims alleged by
plaintiff who voluntarily withdrew from case would not be
subject to tolling when plaintiff attempted to rejoin suit);
*Wagner v. Georgetown Univ. Med. Center*, 768 A.2d 546, 558-559
(D.C. 2001) (claims against doctor that had been voluntarily
dismissed were barred by the statute of limitations when
plaintiff attempted to re-assert those claims at a later date).[8]
Accordingly, plaintiff's voluntary dismissal of Dr. Sandi from
the case operated to cease tolling on all claims against him,
and the claims against Dr. Sandi are time-barred.

The second question, whether the voluntary dismissal of
"state law retaliation" claims against The Sandi Group ceased
the tolling on those claims, is less clear.  None of the cases

---

[8] The fact that plaintiff may not have understood that no "state
law retaliation" claim existed under D.C. law is also
insufficient to toll the statute of limitations. "[I]f a
plaintiff mistakes his remedy, in the absence of any statutory
provisions saving his rights, or where from any cause . . . the
action abates or is dismissed, and during the pendency of the
action, the limitation runs, the remedy is barred." *Carter*, 764
F.2d at 856 (citing *Willard v. Wood*, 164 U.S. 502, 523 (1896)).
This premise applies whether the action was dismissed
voluntarily or involuntarily. *See Dupree v. Jefferson*, 666 F.2d
606, 611 (D.C. Cir. 1981) (addressing the pendency of
voluntarily dismissed actions); *York & York Constr. Co. v.
Alexander*, 296 A.2d 710, 712 (D.C. 1972) (addressing pendency of
involuntarily dismissed actions).

cited by the parties appear to involve the dismissal or
withdrawal of only certain claims against a party who remained
in the case, in contrast to the dismissal of a party or the
dismissal of an entire case.  *See, e.g.*, *Wagner*, 768 A.2d at 559
(dismissal of all claims against doctor ceased tolling on
statute of limitations, such that plaintiffs were time-barred
from asserting new claims against the doctor at a later stage of
the litigation).  On the facts of this case, however, the Court
finds that plaintiff expressly waived any additional claims
against The Sandi Group when he represented to the Court that
the Second Amended Complaint "eliminated" the state law
retaliation claims against The Sandi Group, and stated that the
purpose of the Second Amended Complaint was to "expedite and
streamline further proceedings by narrowing the action to the
pending Section 3730(h) claim and particularizing the
allegations that pertain to *the sole remaining claim*."  ECF No.
50 at 2 (emphasis added).  These representations were made by
plaintiff to the Court in support of leave to amend.  These
representations were also likely made to defendants, presumably
serving as the basis for their consent to the motion to amend.
Having made these representations to the Court and the parties
that he was withdrawing his "state law retaliation" claims and
that he intended to proceed against The Sandi Group with only
one claim, plaintiff cannot now attempt to bring additional

21

claims into this litigation.  Under these circumstances, the
Court finds that the rationale in *Ciralski* applies to claims
dismissed by plaintiff against The Sandi Group even though The
Sandi Group remained in the litigation.  Accordingly, the Court
finds that the statute of limitations on Counts II, III and IV
has expired and the claims are time-barred.

For similar reasons, the Court finds that Counts II, III
and IV do not relate back under Federal Rule of Civil Procedure
15(c) to the filing of prior complaints.  Under Rule 15(c), an
amended pleading relates back to the date of the original
pleading when the amendment "asserts a claim or defense that
arose out of the conduct, transaction, or occurrence set out—or
attempted to be set out—in the original pleading."  Plaintiff
argues that "the allegations in the Third Amended Complaint
relate back to those alleged in the Complaint, Amended
Complaint, and Second Amended Complaint."  Pl.'s Opp. to The
Sandi Group's Mot. to Dismiss at 10; *see* Pl.'s Opp. to Dr.
Sandi's Mot. to Dismiss at 14.

Here, plaintiff's new claims could only relate back to the
Second Amended Complaint, since that was the operative complaint
prior to the filing of the Third Amended Complaint.  *See Adams,*
219 F.R.D. at 197 (citing *Washer,* 110 U.S. at 562) (filing of an
amended complaint renders the prior complaint to be of no legal
effect); *Wagner*, 768 A.2d at 558-59 (where prior claim against

doctor had been dismissed, new claim against doctor did not relate back within the meaning of Rule 15 because there were no existing claims for the new claim to relate back to, and the new claim did not reinstate the original complaint against the doctor).  With respect to the claims against Dr. Sandi, there is nothing in the Second Amended Complaint that the new claims could relate back to, since all claims against Dr. Sandi were eliminated from the Second Amended Complaint.  Under Rule 15(c), when an amendment "changes the party or the name of the party against whom a claim is asserted," an amendment will only relate back if the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).  Plaintiff has alleged no such mistake..  Accordingly, the claims against Dr. Sandi cannot relate back to the Second Amended Complaint.[9]

The Court also finds that the new claims asserted against The Sandi Group do not relate back to the Second Amended Complaint.  Assuming that plaintiff is attempting to revive his "state law retaliation" claims, the claims do not relate back

---

[9] The Court also notes that it would be particularly unfair to require Dr. Sandi, who had been "eliminated" from the litigation, to participate again as a litigant.  *See, e.g., U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 516 (3d Cir. 2007) ("[P]arties that do not appear in amended complaints have a legitimate expectation that they are no longer involved in the litigation.").

because they were eliminated from the Second Amended Complaint.[10] *See* SAC, ECF No. 50.  If, instead, the new claims are other common law theories of recovery that relate back to the False Claims Act retaliation claim, they are barred by the Settlement Agreement.  *See* Settlement Agreement ¶ 6 (barring "common law theories of recovery").

The sole case cited by plaintiff in support of his arguments on the statute of limitations and the issue of relation back does not lead to a different result; indeed, it supports defendants' arguments.  In *Miller v. Holzman*, No. 95-1231, 2006 U.S. Dist. LEXIS 9165 (D.D.C. Mar. 9, 2006) *aff'd in part, vacated in part by Miller v. Bill Harbert Intern. Const., Inc.*, 608 F.3d 871, 391 (D.C. Cir. 2010), the court held that the "government's claims *may* relate back if they arose out of the same conduct as the relator's claims."  (emphasis added).  This case is distinguishable for two reasons.  First, the issue in *Miller* was whether the government's claims at the time of intervention will relate back to an original *qui tam* complaint.  Here, plaintiff has been a party to this action from the outset, unlike the government when it elects to intervene in an ongoing *qui tam* action.  Any special consideration given to the government when joining a *qui tam* would therefore not apply

---

[10] As explained elsewhere in this Opinion, the Court does not find that Counts II, III, and IV are "state law retaliation claims" under the Settlement Agreement.

here.   Furthermore, the *Miller* court held that new claims not specifically relating back to the existing claims must "rest on their own feet." *Id*. at 18.   Here, plaintiff's new claims do not relate back to their existing claims because they are either barred by the Settlement Agreement or there are no claims in the Second Amended Complaint that the new claims could relate back to.

Accordingly, the Court finds that Counts II, III and IV of the Third Amended Complaint are barred by the statute of limitations and do not relate back to any prior complaint under Rule 15(c).

### IV.   CONCLUSION

For all of the foregoing reasons, defendants' motions to dismiss are **GRANTED** and Counts II, III and IV of the Third Amended Complaint are hereby **DISMISSED**.   An appropriate Order accompanies this Memorandum Opinion.


**Signed:    Emmet G. Sullivan**
**          United States District Judge**
**          March 29, 2013**


25